RENDERED: AUGUST 13, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1769-ME

JONATHAN MICHAEL ESTES                      APPELLANT

|   |   |
|---|---|
| v. | APPEAL FROM OLDHAM CIRCUIT COURT<br>HONORABLE DOREEN S. GOODWIN, JUDGE<br>ACTION NO. 17-D-00061-001 |

SALLY ANN ESTES                                APPELLEE

OPINION
AFFIRMING

\*\* \*\* \*\* \*\* \*\*

BEFORE: CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE: Jonathan Estes appeals from an order of the Oldham Family Court which denied his Kentucky Rules of Civil Procedure (CR) 60.02 motion seeking a new domestic violence order (DVO) hearing. Appellant alleges he is entitled to a new hearing due to newly discovered evidence and perjured statements made by Sally Estes. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

Appellant and Appellee were married on January 1, 2005, and have three children. On May 26, 2017, Appellee filed a domestic violence petition against Appellant on behalf of herself and the three children. On June 29, 2017, a hearing was held where Appellant, Appellee, and other witnesses testified. Appellee alleged that Appellant had a temper and would verbally attack her and the children. She testified that he would scream at them, call them names, and be physically threatening. She described two specific instances of this which occurred in May of 2017. Appellee also testified to other past instances of Appellant pushing her, throwing objects at her, and breaking her personal possessions.

Appellee also testified to statements made by the children. Appellee testified that the middle child cut his wrists with a dull knife and asked her for a sharper knife so he could kill himself. Appellee attributed this behavior to the child's having been on a visit with Appellant a few days before. Appellee also testified that the middle child told her that he was afraid of Appellant and while discussing it, the child vomited on the floor. Appellee attributed this behavior to the child's fear of Appellant. Appellant objected to all the hearsay statements of the children, but the trial court allowed them.

At the end of the hearing, the trial court granted Appellee's petition for a DVO. The court found that Appellee was in fear of imminent domestic violence and made specific comments regarding the cutting and vomiting incidents. The DVO was entered for a period of six months. Soon thereafter, Appellant filed a CR 59.05 motion to alter, amend, or vacate the DVO. He argued, amongst other things, that Appellee's testimony regarding statements made by the children constituted hearsay, should not have been admissible, and could not be the basis of entering the DVO. The trial court agreed, but held:

> The [c]ourt, in disregarding the Petitioner's alleged hearsay testimony, finds there was sufficient evidence of record to support a finding of domestic violence and abuse. Specifically, the record contained ample evidence of the escalating, aggressive and irrational behaviors of the Respondent, creating a fear of imminent physical injury for the Petitioner, on behalf of herself and the children. The [c]ourt was able to reach this conclusion without considering the statements allegedly made by the children.

The trial court did not vacate the DVO. Appellant did not appeal the entry of the DVO.

Soon after the entry of the DVO, the parties began divorce proceedings. During this time, Appellant claims that evidence came to light showing that some of Appellee's testimony during the DVO was false. Appellant then brought the underlying CR 60.02 motion requesting a new DVO hearing based on new evidence and perjury. The trial court denied the motion, finding no

perjury and no new evidence that would require a new DVO hearing. This appeal

followed.[1]

## ANALYSIS

CR 60.02 states:

> On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds: (a) mistake, inadvertence, surprise or excusable neglect; (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02; (c) perjury or falsified evidence; (d) fraud affecting the proceedings, other than perjury or falsified evidence; (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief. The motion shall be made within a reasonable time, and on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this rule does not affect the finality of a judgment or suspend its operation.

Additionally, we note:

> [o]ur standard of review of a trial court's denial of a CR 60.02 motion is whether the trial court abused its discretion. The test for abuse of discretion is whether the trial court's decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."
>
> . . . The decision as to whether to grant or to deny a motion filed pursuant to the provisions of CR 60.02 lies

---

[1] We must note that the DVO in this case has long since expired.

-4-

within the sound discretion of the trial court. The rule provides that a court may grant relief from its final judgment or order upon various grounds. Moreover, the law favors the finality of judgments. Therefore, relief may be granted under CR 60.02 only with extreme caution and only under the most unusual and compelling circumstances.

*Age v. Age*, 340 S.W.3d 88, 94 (Ky. App. 2011) (citations omitted).

CR 60.02 allows appeals based upon claims of error that "were unknown and could not have been known to the moving party by exercise of reasonable diligence and in time to have been otherwise presented to the court." The rule represents the codification of the common law writ of coram nobis, which allows a judgment to be corrected or vacated based "upon facts or grounds, not appearing on the face of the record and not available by appeal or otherwise, which were not discovered until after rendition of judgment without fault of the parties seeking relief."

*Sanders v. Commonwealth*, 339 S.W.3d 427, 437 (Ky. 2011) (citations omitted).

In those instances where grounds relief upon for relief under a 60.02 motion are such that they were known or could have been ascertained by the exercise of due diligence prior to the entry of the questioned judgment, then relief cannot be granted from the judgment under a 60.02 proceeding. Relief afforded by a 60.02 proceeding is extraordinary in nature and should be related to those instances where the matters do not appear on the face of the record, were not available by appeal or otherwise, and were discovered after rendition of the judgment without fault of the party seeking relief.

*Bd. of Trustees of Policemen's & Firemen's Ret. Fund of City of Lexington v.*

*Nuckolls*, 507 S.W.2d 183, 186 (Ky. 1974).

As stated previously, after the DVO was entered, the parties began divorce proceedings. Appellant claims that during these proceedings, evidence came to light showing Appellee perjured herself during the DVO hearing. Appellant focuses on three instances of alleged perjured testimony.

The first is in regard to the cutting incident. After the DVO was entered, child protective services (CPS) got involved with the family. A report written by a CPS investigator indicated that the knife used by the middle child in the cutting incident was fake and that there were no marks on the child's arm. Appellant claims that Appellee's testimony at the DVO hearing that the middle child was involved in a suicidal cutting incident was perjury because the child could not break the skin with the fake knife. Appellee responded by arguing that she did not say the knife was fake, only dull. Appellee believed the more concerning issue was the child emulating suicidal behavior. Appellee also acknowledged that the knife did not pierce the child's skin, but did leave marks on the arm.

Also regarding the cutting incident, during the DVO hearing, Appellee stated that it occurred on May 16, 2017, a few days after the child visited Appellant. During the divorce proceeding, evidence revealed that it occurred on May 19, 2017, about a week after the child's visit with Appellant. Appellant claims that Appellee purposefully misstated the date as May 16 in the DVO

proceeding to make it closer to the visit with Appellant in order for the cutting to be attributed to said visit. Appellee claims that her use of the incorrect date was a simple error.

The second instance of alleged perjured testimony was Appellee's statement that the middle child threw up while discussing how afraid he was of Appellant. During the divorce proceedings, a custodial evaluator spoke to the children. The evaluator's report stated that the vomiting incident was discussed with the middle child and the child threw up while he was discussing the divorce with Appellee. Appellant claims Appellee lied during her testimony when she stated the child vomited while discussing how scared he was of Appellant. Appellee denied this allegation during the divorce trial and the child was not called to testify. Appellee claims this is not perjured testimony, but simply conflicting accounts of what actually occurred.

The third instance of alleged perjury concerns Appellee's testimony during the DVO hearing that Appellant had been physically violent toward her. CPS spoke with Appellee's therapist during its investigation. The CPS report stated that per Appellee's therapist, Appellee reported that Appellant had "not laid a hand on her or the children," only that he had damaged property and was demeaning toward the children. Appellant claims this directly contradicts her testimony of some physical violence at the DVO hearing. Appellee argues that

Appellant was able to call her therapist as a witness during the DVO hearing, but did not. She also alleges that the therapist's records were submitted into evidence during the divorce proceedings and do show that Appellee reported to her that Appellant had been physically abusive.

After reviewing the arguments of the parties, the record, and the relevant case law, we conclude that the trial court did not abuse its discretion in denying Appellant's CR 60.02 motion. First, we must note that very little of the record from the divorce proceedings is contained in the record before this Court. "It is incumbent upon Appellant to present the Court with a complete record for review. When the record is incomplete, this Court must assume that the omitted record supports the trial court." *Chestnut v. Commonwealth*, 250 S.W.3d 288, 303 (Ky. 2008) (citations omitted). With this in mind, we will now analyze Appellant's argument.

The trial court held that Appellant has not uncovered new evidence or perjured testimony. The trial court believed all that was proven was that there was conflicting evidence presented by the parties. The court also held that it still believed there was sufficient evidence to enter the DVO, despite Appellant's new evidence. Finally, the court also held that there has been no finding that Appellee perjured herself during the DVO hearing or offered false evidence.

We agree with the trial court. At the outset we believe that Appellant's CR 59.05 motion resolved most of the issues he raises here. The trial court disallowed the hearsay statements of the children, but still found enough evidence to enter the DVO. The CR 59.05 motion eliminated most of the issues surrounding the cutting and vomiting incidents.

In addition, we believe that some of this alleged new evidence could have been discovered during the DVO hearing. For example, Appellant could have asked additional questions during the DVO hearing about the cutting incident. With a little more probing, the fact that the knife did not break the skin of the child could have been revealed.

We also believe that the date of the cutting incident is immaterial. May 16 and May 19 were both multiple days after the child's visit with Appellant. Appellant made the argument during the DVO hearing that the cutting incident did not happen soon after a visit with him, but while the child was in the care and custody of Appellee.

In addition, whether the child vomited while talking about his fear of Appellant or generally talking about the divorce is conflicting evidence, not necessarily perjury. The same goes for whether Appellant had been physically violent in the past. Appellant claims he had not been, but Appellee claims he had.

> The Court of Appeals . . . [is] entitled to set aside the trial court's findings only if those findings are clearly

-9-

erroneous. And, the dispositive question that we must answer, therefore, is whether the trial court's findings of fact are clearly erroneous, i.e., whether or not those findings are supported by substantial evidence. "[S]ubstantial evidence" is "[e]vidence that a reasonable mind would accept as adequate to support a conclusion" and evidence that, when "taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses" because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court. Thus, "[m]ere doubt as to the correctness of [a] finding [will] not justify [its] reversal," and appellate courts should not disturb trial court findings that are supported by substantial evidence.

*Moore v. Asente*, 110 S.W.3d 336, 353-54 (Ky. 2003) (footnotes and citations omitted). Here, the same trial judge presided over the DVO hearing, the divorce proceedings, and the CR 60.02 motion. She was in the best position to judge the credibility of the witnesses and determine if Appellee perjured herself. The court did not believe such was the case and we will defer to her judgment.

<u>CONCLUSION</u>

Based on the foregoing, we affirm the judgment of the trial court.


ALL CONCUR.

BRIEFS FOR APPELLANT:

Allen McKee Dodd
Louisville, Kentucky

BRIEF FOR APPELLEE:

James L. Theiss
James Daniel ("J.D.") Theiss
LaGrange, Kentucky